NOT FOR PUBLICATION                               [Docket No. 17]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ANABEL CENTENO, | |
| Plaintiff, | |
| v. | Civil No. 07-1199(RMB) |
| MACY'S CORPORATE SERVICES, INC., | OPINION |
| Defendant. | |

APPEARANCES

Ellen M. McDowell, Esq.
McDowell Riga
46 W. Main Street
Maple Shade, NJ 08052
        Attorneys for Plaintiff

Francis T. McDevitt, Esq.
Naulty, Scaricamazza & McDevitt, LLC
Greentree Commons
9003 A Lincoln Drive West
Marlton, NJ 08053
        Attorneys for Defendant

Catherine E. Sison, Esq.
Macy's Law Department
611 Olive Street, Suite 1750
Saint Louis, MO 63101
        Attorneys for Defendant

**BUMB**, United States District Judge:

**Introduction:**

This matter comes before the Court upon Defendant's motion for summary judgment.  For the reasons set forth below,

Defendant's motion will be granted.

**Background:**

The following facts are drawn from the parties' Rule 56.1 statements and are reviewed in a light most favorable to Plaintiff, the non-moving party. On June 21, 2004, Plaintiff, Anabel Centeno, was hired as a "scanner" at Macy's Cherry Hill Customer Return Center. SOF at ¶ 1. As a scanner, Plaintiff was responsible for accurately scanning with a scan gun, verifying and labeling the contents of boxes of returned merchandise. Id. at ¶ 2.

During her probationary period with the Company, Plaintiff was rated "Below Standards" for productivity. Her average of 144 units/hour was well below the department average of 185 units/hour. Id. at ¶ 5. Centeno's supervisor, Annette Rivera, noted on her 2004 Probationary Performance Evaluation that Centeno "needs to improve on her productivity." Id. On her 2004 Annual Performance Evaluation, Centeno had poor productivity numbers, which resulted in a score of 1 out of a possible 7 for her individual productivity. Id. at ¶ 6. Centeno's annual productivity numbers were far below the team average: her score was 162 units/hour while the team averaged 209 units/hour. Id.

On September 1, 2005, Annette Rivera had a meeting with all the scanners to introduce a company-wide Productivity Policy (the

"Policy"). Id. at ¶ 8. The goal of the Policy was to improve merchandise processing speed, and it was enforced via a progressive coaching and counseling procedure. Id. at ¶ 11. If a scanner fell below 75 percent of the scanning team's average in a given month, the scanner would receive coaching and counseling designed to improve the scanner's performance. Id. Subsequent failures to meet the standard resulted in progressive written performance write-ups referred to as "verbal," "warning," and "final warning" (in that order). Id. Under the Policy, a scanner who failed to meet the productivity standard after receiving all three levels of warning would be terminated. Id.

On September 20, 2005, Plaintiff brought a doctor's note to Human Resources stating that she was pregnant. Id. at ¶ 13. In October 2005, Centeno was nominated by Rivera for an "All Star" Employee award for her help in implementing a new operation procedure, her help in another department, and her positive attitude and ability to get along with others. Id. at ¶ 14. Plaintiff failed to meet the productivity standard for October and was trending below average for November. Id. at ¶ 15. On or about November 17, 2005, Rivera met with Plaintiff to coach and counsel her for her low productivity numbers. Id. Rivera discussed with Centeno ways to improve her productivity. Id.

Subsequently, Centeno failed to meet the productivity standard for the month of December. Id. at ¶ 16. On January 5,

2006, pursuant to the Policy, Centeno received a documented "verbal" write-up concerning her low productivity numbers.  Id.  Plaintiff did not write a response in the "Associate Response" section of the form.  Id.  Because Plaintiff later failed to meet the productivity standard in January, she received a "written" warning pursuant to the Policy.  Id. at ¶ 17.  In the response section, Plaintiff wrote, "I am trying to not make any mistakes and do everything as fast as I can."  Id.

When Plaintiff failed to meet the standard again in February, she received a written "final warning" on March 14, 2006.  Id. at ¶ 18.  In the response section, Plaintiff wrote, "I am requesting a tr[ai]ner to get some poin[t]er[s] of how to get faster in scanning."  Id.  After this final warning, Rivera assigned Karla Reyes to work with Plaintiff.  Id. at ¶ 19.

On March 16, 2006, Plaintiff informed Rivera that she did not feel well, that her back hurt and she felt dizzy.  Id. at ¶ 20.  Rivera, who asked Plaintiff if she needed to go home or to a doctor, told Plaintiff she should sit down.  Id.  On March 21, 2006, Plaintiff brought in a doctor's note stating that she could not lift more than 15-20 pounds.  Id. at ¶ 21.  Rivera then assigned Plaintiff a helper, named Mayra Alamo, to assist her with any lifting that exceeded the restrictions.  Id. at ¶ 22.  Plaintiff was told not to lift anything that exceeding the restrictions.  Id.

4

Centento failed to meet the productivity standards for March 2006.  Id. at ¶ 25.  On April 4, 2006, Rivera and Linda Perillo, the Human Resources Manager (via telephone), and Wanda Reyes, the Human Resources Administrator, met with Plaintiff to discuss her productivity failure for March.  Id.  Rivera advised Centeno that, pursuant to the Policy, and because Centeno had consistently failed to meet the productivity standard, Macy's had to terminate her employment.  Id.  At the time of this discussion, Plaintiff understood that she was being terminated because of her low productivity.  Id. at ¶ 27.

At this April 4, 2006 meeting, Perillo suggested that perhaps Plaintiff's doctor would take her out of work in advance of her due date so that Plaintiff would be eligible for disability and could remain on the company's payroll.  Id. at ¶ 28.  Perillo told Plaintiff that she would then have the opportunity to return to work, still on a final warning, but would have an additional 30-day period to bring up her productivity.  Id.

Plaintiff's employment was terminated during the first week of April, 2006.  During the entire span of performance, coaching and counseling, Plaintiff never complained to Rivera, Perillo or anyone else at Macy's that she was being discriminated against or singled out because of her pregnancy.  Id. at ¶ 31.  On April 20, 2006, Plaintiff filed a Charge of Discrimination with the New

5

Jersey Division of Civil Rights alleging that she had been discriminated against on the basis of her pregnancy. On March 13, 2007, Plaintiff filed a two count Complaint with this Court alleging that Defendant had discriminated against her in violation of the Pregnancy Discrimination Act ("PDA") and in violation of the New Jersey Law Against Discrimination ("LAD"). During discovery, Plaintiff provided an interrogatory response identifying co-workers named Eda, Tanya, Marta, and Hilda (she could not identify their last names) as being similarly situated in terms of low productivity numbers. Id. at ¶32. Plaintiff later admitted at deposition that these co-workers never told her their productivity numbers and Rivera never disclosed these numbers. Id. Plaintiff only tracked her own productivity numbers. Id. at ¶ 37.

Macy's did not transfer any scanners who were being coached and/or counseled pursuant to the Policy to other positions. Id. at ¶ 39. Additionally, while scanners generally worked upstairs at their assigned locations, sometimes certain kinds of merchandise needed to be scanned downstairs. Id. at ¶ 41. Rivera would sometimes send scanners downstairs if there was merchandise that needed to be scanned there. Id.

Certain non-scanner positions at the facility, such as CRC Researcher, required significant time researching various information at the computer and, therefore, a significant amount

6

of time sitting down.  Id. at ¶ 42.  Plaintiff's co-worker, Karla, was a CRC Researcher.  Id.  Another co-worker, Magdelena, was a "Putaway Associate," a position that required sorting merchandise and putting it in boxes.  Id. at ¶ 43.  Both Karla and Magdelena were pregnant in 2005, but neither had any medical restrictions during their respective pregnancies.  Id. at ¶ 44.

**Applicable Standard:**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  "In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983) cert. dismissed, 465 U.S. 1091 (1984)).  "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**Discussion:**

Plaintiff has asserted claims for pregnancy discrimination

pursuant to both the Pregnancy Discrimination Act ("PDA") and the New Jersey Law Against Discrimination ("LAD").  Title VII prohibits an employer from discriminating against an employee because of his or her sex.  42 U.S.C. 2000e-2(a).  The Pregnancy Discrimination Act (PDA), an amendment to Title VII, made clear that the terms "because of sex" or "on the basis of sex"

> include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work. . . .

42 U.S.C. 2000e(k).  In brief, "[t]here is employment discrimination whenever an employee's pregnancy is a motivating factor for the employer's adverse employment decision." Carnegie Ctr. Assoc., 129 F.3d 290, 294 (3d Cir. 1997).  The PDA, however, does not require an employer to accord special treatment to pregnant employees.  Instead, the PDA, "mandates that employers treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work." Doe v. C.A.R.S. Prot. Plus, Inc., 2008 U.S. App. LEXIS 11519 at * 8 (3d Cir. May 30, 2008).

Likewise, the LAD, N.J. Stat. Ann. § 10:5-1 et seq., "requires equal treatment for members of the statute's protected classes" including "familial status" defined, in part, as "any person who is pregnant." N.J. Stat. Ann. § 10:5-5(ll); Gerety v.

Atlantic City Hilton Casino Resort, 184 N.J. 391 (2005). Generally, determinations of whether a person has been discriminated against in violation of the LAD follow the same burden shifting analysis employed in Title VII cases where an employee sets forth indirect evidence of discrimination. See Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005); Spagnoli v. Brown, & Brown Metro, Inc., No. 06-414, 2007 U.S. Dist. LEXIS 59698 at * 13 (D.N.J. Aug. 15, 2007). Similarly, the analysis of a discrimination claim supported by direct evidence under the LAD is analyzed similarly to its federal counterpart. See Bergen Commercial Bank v. Sisler, 157 N.J. 188, 208 (1999) (looking to federal cases discussing direct evidence in the context of analyzing a LAD claim). In this case, Plaintiff asserts that both direct and circumstantial evidence exist to support her claim of discrimination. This Court will first turn to the proposed direct evidence.

    A plaintiff attempting to prove discrimination by direct evidence faces a "high hurdle." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998). In order to constitute direct evidence, such evidence must show that the "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Id.; see Bergen Comm. Bank, 157 N.J. at 208 ("In the context of a claim for wrongful discharge, an employee must show direct evidence that decision[]makers

9

placed substantial negative reliance on an illegitimate criterion.") (internal quotations omitted).  If believed, direct evidence "would prove the existence of the fact in issue without any inference or presumption."  <u>Villanueva v. Christiana Care Health Servs., Inc.</u>, No. 04-258, 2007 U.S. Dist. LEXIS 4760 at * 8 (D. Del. Jan 23, 2007).  If a plaintiff succeeds in presenting direct evidence of discrimination, "the causation burden shifts to the defendant to prove that it would have taken the same employment action even if it had not considered an impermissible factor."  <u>Id.</u> at *9 (citing <u>Fekete v. Aetna, Inc.</u>, 308 F.3d 335, 338-39 (3d Cir. 2002).

Plaintiff asserts that she has set forth direct evidence in the form of the personnel director's statement that if Plaintiff could get her physician to put her on disability, she could come back to work when her pregnancy was over.  Pl.'s Br. at 12.  According to Plaintiff, this constitutes direct evidence that she was welcome back to work as long as she was no longer pregnant.

Based on the facts set forth by Plaintiff, this Court cannot find that there is direct evidence of discrimination; her supervisor's last chance offer for Plaintiff to prove that she could not meet the productivity standards via a doctor's note does not constitute evidence that "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision."  <u>Anderson v. CONRAIL</u>, 297 F.3d 242, 248

(3d Cir. 2002)(citation omitted).  Instead, all Plaintiff has shown is that her employer was giving her the chance to substantiate her inability to meet the productivity guidelines and be excused from such guidelines by a note from her doctor. There is no dispute that Macy's had already complied with the lifting restriction imposed by Plaintiff's doctor stating that Plaintiff was unable to lift more than 15-20 lbs.  Pl.'s Ex. H. In light of the above, this Court cannot find that Perillo's statement demonstrates that Plaintiff's pregnancy was more likely than not a substantial factor in the decision to fire her.  See Fekete, 308 F.3d at 349.  Thus, Plaintiff has failed to overcome the high hurdle of demonstrating direct evidence sufficient to shift the burden to the Defendant.

In the alternative, Plaintiff asserts indirect evidence in support of her discrimination allegations.  Where an employee asserts indirect evidence of pregnancy discrimination, the familiar McDonnell Douglas burden shifting scheme applies. Pursuant to this analysis,

> the employee must first establish a prima facie case. If the employee is able to present such a case, then the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision. If the employer is able to do so, the burden shifts back to the employee, who, to defeat a motion for summary judgment, must show that the employer's articulated reason was a pretext for intentional discrimination.

C.A.R.S., 2008 U.S. App. LEXIS 11519 at * 9.  In the instant

case, it is undisputed that Plaintiff has established a prima facie case for purposes of this motion only. See Def.'s Br. at 4 n. 2. Thus, this Court will proceed to the next step.

Once the plaintiff has established a prima facie claim, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason" for the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer articulates such a reason, the burden then shifts back to the plaintiff, who must show that the nondiscriminatory reason articulated by the defendant is in fact a pretext for discrimination. Id. at 804. "In order to show pretext, a plaintiff must submit evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." C.A.R.S., 2008 U.S. App. LEXIS 11519 at * 24 (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Here, Macy's has clearly asserted a legitimate, non-discriminatory reason for the termination, Plaintiff's repeated failure to meet the productivity standards. Thus, the burden shifts back to Plaintiff to show that this reason is pretextual. In her opposition brief, Plaintiff sets for two reasons in

12

support of her pretext argument: 1) the offer by Defendant to allow Plaintiff to go on disability, and 2) allegations that other disabled employees were treated more favorably.

Again, the suggestion that Plaintiff could go out on disability and then return to work on final warning does not show that the reason articulated by Defendant is pretextual.  If anything, it bolsters Defendant's assertion in that Macy's was merely asking that if she was in fact unable to meet productivity standards, that her doctors note reflect that, allowing her to go out on disability.  Because Plaintiff was unable to provide such a note excusing her from productivity standards, she was terminated for her repeated failure to meet those standards as undisputedly evidenced by the series of warnings Plaintiff received.  See SOF at ¶¶ 16-18.

Plaintiff also avers that Macy's treated "other employees differently from plaintiff when they suffered temporary disabilities."  Pl.'s Br. at 14.[1]  Showing that Macy's treated others with medical restrictions more favorably does nothing to undercut the legitimate reason set forth by Macy's.  There is no evidence set forth by Plaintiff that any of the three persons Plaintiff claims were treated more favorably, Margaret Yates, Binshuben Shukla, and Alexandr Velyunskly, had similar

---

[1] Plaintiff has not asserted a claim for disability discrimination

13

productivity problems and were not fired.  Moreover, to the extent Plaintiff presented Macy's with a doctor's note with a lifting restriction, there is no dispute that Macy's accommodated that restriction.  See Pl.'s Dep. at 96:23-97:3.  Moreover, when specifically asked whether Plaintiff told anyone whether she wanted some other accommodations to enable her to meet the productivity numbers because of her pregnancy, Plaintiff answered, "Not that I remember."  Pl.'s Dep. 123:16-19.

Additionally, any attempt by Plaintiff to show that the performance reasons articulated by Defendant are pretextual because she received an award in November of 2005 for her help implementing a new scanning method is not persuasive.  Kautz v. Met-Pro Corp., 412 F.3d 463, 474 (3d Cir. 2005)("The attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law.").

Thus, Plaintiff has utterly failed to set forth any evidence rebutting Macy's legitimate non-discriminatory reason, i.e., her productivity problems, that would allow a finder of fact to "reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action[.]" C.A.R.S., 2008 U.S. App. LEXIS at * 25.  As such, Defendant's motion for summary judgment will be granted.

14

An appropriate Order will issue this date.

Dated: June 30, 2008                     s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE

15